## JOHN CUBIE HODGES v. STATE.

No. A-2957.   Opinion Filed July 9, 1919.

(182 Pac. 260.)

1. **APPEAL AND ERROR—Sufficiency of Evidence.** Where the evidence is in conflict and there is evidence tending reasonably to sustain the finding of the jury, this court will not disturb the verdict on the ground that the evidence is insufficient.

2. **EVIDENCE—Reasonable Doubt—Evidence of Previous Good Character.** Evidence of previous good character may generate a doubt of guilt, where without such evidence no such doubt would exist, but where there is legal evidence, taken together with such good character, showing the guilt of the defendant beyond a reasonable doubt, such good character cannot shield the defendant from the penalty of the law.

3. **APPEAL AND ERROR—Record—Completeness—Correction.** In considering an appeal, this court confines its review to the record filed, and if the same is not full and complete it is the duty of the counsel for plaintiff in error to suggest a diminution thereof, and have the same corrected before the cause is submitted. This court has been very liberal in permitting records to be withdrawn and corrections to be made where any matters have been by inadvertence or mistake omitted therefrom. Any assignment of error not supported by the record will not be considered.

4. **APPEAL AND ERROR—Harmless Error—Ruling on Challenges to Jurors.** Where a defendant has not exhausted his peremptory challenges of jurors and has not had forced upon him a disqualified juror, the action of the court in overruling challenges of defendant to other jurors for cause, if, error, is harmless.

5. **HOMICIDE—Insanity—Burden of Proof—Evidence—Expert Testimony—Weight.** Instructions given by the trial court examined, and held to correctly cover the law of the case when they are considered as a whole

*Appeal from District Court, Caddo County;*
*Will Linn, Judge.*

John Cubie Hodges was convicted of murder and appeals. Affirmed.

*C. B. Case,* for plaintiff in error.

*S. P. Freeling*, Atty. Gen., and *R. McMillan*, Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, John Cubie Hodges, hereinafter called defendant, was informed against for the murder of Clyde Berger, and convicted and sentenced to imprisonment in the penitentiary at McAlester for the term of his natural life. To reverse the judgment rendered, he prosecutes this appeal.

The defendant filed a motion for a continuance upon the ground of the absence of Jesse. H. Jones, a witness for the defendant, for whom a subpoena was issued on the —— day of August, 1916, and who was out of the state at the time of the issuance of the subpoena, and who was still out of the state at the time of the trial, and averred that if said witness were present he would testify as to the mental incapacity of the defendant at times, and state facts tending to show that the defendant suffered from epilepsy.

The state resisted the continuance upon the ground of want of diligence on the part of the defendant, and that the evidence of said absent witness would be cumulative.

On hearing of said motion it was shown that defendant had present a number of witnesses to prove that he was an epileptic and was afflicted with epileptic insanity, but had no witness other than the absent witness by whom he could prove the particular acts of the defendant set forth in the motion for continuance as having occurred in the presence of the said absent witness, Jesse Jones.

The court overruled the application for a continuance, and the defendant excepted.

The trial having been entered upon, several jurors upon their *voir dire* examination were excused by the court, and other jurors, upon like examination, were challenged by the defendant for cause and such challenges overruled, to which said respective actions of the court the defendant separately excepted, but as the record does not show that the defendant exhausted his peremptory challanges, nor that the jury by which he was tried was not an impartial jury, we do not think it necessary to recite the examinations other than the material evidence of Charles Daugherty, called as a juror, and who testified that he had not been summoned by the sheriff; that he was an employe of one Thompson, and attended the trial at the request of said Thompson, who it was otherwise shown was a particular friend of the deceased, and that the sheriff had never mentioned the subject to him. As soon as it appeared that Daugherty was not a regular summoned juror, he was immediately, by consent of the state and without objection of the defendant, discharged.

The undenied material evidence is that the defendant and Alie Berger, a brother of Clyde Berger, had a controversy about the renting of some land about 12 o'clock a. m., on October 23, 1915, in which the defendant called Alie Berger a liar, and was knocked down by him with a blow of his fist; that upon the defendant getting up Alie Berger expressed to the defendant sorrow for having hit him, and asked the defendant to drop it and have no further trouble, and that the defendant and Alie Berger went their respective ways, and that shortly after they had separated the defendant remarked to another that Alie Berger would be sorry for what he had done; that shortly thereafter the defendant purchased a 38-caliber pistol at a store and cartridges for the same from another store, and

about two hours after said difficulty in which the defendant was knocked down went into a butcher shop in the town of Carnegie, in Caddo county, Okla., in which Alie and Clyde Berger were, and the defendant began talking to Clyde Berger about the lease of the land over which the difficulty arose between Alie Berger and defendant, and Alie Berger joined in said conversation and said to the defendant, "go on; there was no use of having any trouble;" that then the attention of Alie Berger was called by some one outside of the shop wanting to borrow a horse, and Alie Berger went to the door of the shop, and the defendant shot him twice, and that immediately upon the defendant firing the shots Clyde Berger started toward the defendant, and the defendant shot him, and defendant and Clyde Berger grappled, and defendant and Clyde Berger fell upon the floor, and defendant again shot Clyde Berger; that the defendant was removed to the office of a doctor and his face washed and examined, and Clyde Berger was taken to a hospital in Chickasha, and about five or six hours after being shot by the defendant died from the effects of said shooting. The defendant testified that he had no recollection of having purchased the pistol and cartridges on the day he shot Clyde Berger and Alie Berger; that he had no recollection of having shot "these people"; that up to the time Alie Berger struck him, and still, his (defendant's) feelings were good toward Alie Berger; that he, defendant, had never had any trouble before; that he was given to epileptic spells, and that such spells would be brought upon him by excitement; and that the first thing he remembered after being struck by Alie Berger was when he found himself in Dr. Contrell's office near the scene of the shooting, after he had killed Clyde Berger.

The evidence is in conflict as to the mental condition of the defendant prior to and at the time he killed Clyde Berger, which evidence is very voluminous, and no useful purpose would be served by reciting the same; tending on one side to show that the defendant was, and on the other side that he was not, at the time he killed Clyde Berger, in such mental condition as, in law, to be responsible for such killing.

There was also evidence, which was not denied by the state, that the defendant prior to the killing of Clyde Berger had the general reputation of being a peaceable and law-abiding citizen.

The court, among other instructions, gave the following, viz:

"No. 8. Gentlemen of the jury, you are instructed that the defendant has interposed as one of his defenses in this case the plea of insanity. When that defense is interposed, the burden of proof is upon the defendant to introduce sufficient evidence to raise in your minds a reasonable doubt of his sanity. It is not required that the defendant shall prove his insanity to the satisfaction of the minds of the jury by competent evidence beyond a reasonable doubt, or by a preponderance of the evidence. It is sufficient if he only introduces sufficient evidence to raise in your minds a reasonable doubt of his sanity, and when this is done you are instructed that the burden of proof is upon the state to prove the sanity of the defendant by competent evidence, beyond a reasonable doubt, before you would be justified in convicting the defendant as charged in the information, and then the burden of proving the sanity of the defendant rests upon the state, like that of proving any other material allegation of the information; and, if you believe that the state has failed to prove by competent evidence, beyond a reasonable doubt, the sanity of the defendant, and if from all the evidence in the case

there is a reasonable doubt in your minds as to the sanity of the defendant at the time it is alleged he shot and killed the deceased, Clyde Berger, you will then return a verdict of not guilty and acquit the defendant."

"No. 11. The court instructs the jury that testimony has been given by certain witnesses whom in law are termed experts, and in this connection I would suggest to you that while in cases such as are being tried, the law receives the evidence of men expert in certain lines as to their opinions derived from their knowledge of particular matters, the ultimate weight which is to be given to the testimony of expert witnesses is a question to be determined by the jury. There is no rule of law which requires you to surrender your own judgment to that of any person testifying as an expert witness, or to give controlling effect to the opinion of scientific witnesses; in other words, the testimony of an expert, like that of any other witness, is to be received by you and given such weight as you think it properly entitled to, but you are not bound or concluded by the testimony of any witness, expert or other.

"(b) The court instructs the jury that before the opinion of an expert has any value whatever, the jury must first find to be true the facts upon which such opinion is based."

To the giving of said instructions, the defendant respectively excepted.

The defendant made timely motion for a new trial, and a motion in arrest of judgment, each of which motions was overruled, and the action of the court in overruling said motions separately excepted to.

The defendant complains that he suffered prejudicial error by reason of his application for a continuance being denied. The facts are that, notwithstanding his prosecution had been pending for many months, the defendant did

not, until August preceding his trial on September 4th, cause a subpoena to issue for the absent witness, who was at the time and at the time of the trial absent from the state, and no excuse was offered for such want of diligence, and it was on the hearing of the said application for a continuance shown that the testimony which the absent witness would give would be cumulative, and that there were witnesses present who would testify to a like statement of facts shown to be within the knowledge of said absent witness. We are of the opinion that the court did not err in overruling the motion for a continuance.

"An application for a continuance on account of absent witnesses should show due diligence." *Smith v. State,* 14 Okla. Cr. 348, 171 Pac. 341.

"A motion for a continuance based on the absence of a witness who has not been served with process and who has left the jurisdiction of the court should be overruled." *Pugh v. State,* 6 Okla. Cr. 578, 120 Pac. 296.

"As a general rule, a continuance should not be granted to enable a defendant to obtain cumulative evidence." *Litchfield v. State,* 8 Okla. Cr. 164, 126 Pac. 707, 45 L. R. A. (N. S.) 153.

"A defendant is not entitled to a continuance, as a matter of right, to secure cumulative evidence." *Jones v. State,* 8 Okla. Cr. 576, 129 Pac. 446.

That the granting of a continuance is addressed to the sound discretion of the trial court, and unless an abuse of discretion is shown a judgment will not be reversed on appeal on account of a denial of a continuance, is held in an unbroken line of decisions of this court.

The defendant further insists that the court committed prejudicial error in excusing jurors for cause, in overruling defendant's challenge to jurors for cause, and it was

fundamental error for the stenographer not to take down as requested the complete evidence of jurors on their *voir dire*, and that the court erred in not, on its own motion, discharging the panel because the jury had been tampered with. It is sufficient answer to the charge that the court erred in excusing jurors to point out that the record does not disclose that the court in so doing abused its discretion. So far as overruling the challenges of the defendant for cause, it is sufficient to say that the record does not show that the defendant exhausted his peremptory challenges, or was required to accept a disqualified juror. If legal information had come to the court that an attempt had been made to pack the jury, it was the duty of the court, on its own motion, to discharge the panel, but this very serious charge is not supported by evidence. The most that can be said along such line is that one Thompson, an overzealous friend of the deceased, caused one Charles Daugherty, an employe of said Thompson, to attend the trial, and said Daugherty did so, and, without being summoned by the sheriff, was for some reason, not appearing in the record, called as a juror. As soon as it appeared to the court that Daugherty was not a regularly summoned juror, he was immediately, by consent of the state and without objection of the defendant, discharged. Counsel for the defendant condemn the sheriff and his deputies for an attempt to pack the jury, but there is no evidence in this record that will support the charge that the sheriff or anybody else attempted to pack the jury on this defendant. Before this court will brand any public official of this state with an attempt to pack a jury, which is a most serious offense, the defendant must produce a record clearly establishing such fact. By some inadvertence or mistake, Daugherty was called to the jury box and was immediately dis-

charged. He did not participate as a juror in the trial, and there was no action taken by the trial court, appearing of record, relative to the examination and discharge of Daugherty that in any way was prejudicial to the substantial rights of the defendant, or would authorize the discharge of the entire panel under the circumstances. There was no showing that the sheriff or any of his deputies were purposely summoning as jurors men prejudiced against the defendant, nor was there any showing whatever of any collusion between the sheriff and Thompson, or between Thompson and any other official of the court, whereby Daugherty was called as a juror in this case.

Any attempt to pack a trial jury, whether successful or not, deserves and will meet the severe condemnation of this court; and, where the record supports such contention or there is a reasonable probability that the defendant was imposed upon by fraud or collusion in the selection of jurors, the judgment of conviction will be reversed.

Where it is contended that an attempt has been made to pack the trial jury with friends of the deceased, the record must support such contention, else a judgment of conviction will not be reversed upon such ground.

We fail to find any prejudicial error committed by the court in excusing jurors for cause, or in overruling challenges of jurors by the defendant for cause, or in not, on its own motion, discharging the panel of jurors.

The only defense interposed by the defendant was that of epileptic insanity at the time of the killing, and it is insisted that the defendant should have been acquitted on that ground. The theory of insanity presented an issue of fact entirely for the consideration and determination of the jury; and, there being evidence of the sanity of the de-

fendant at the time he killed Clyde Berger, notwithstand-
ing there was evidence to the contrary, sufficient to support
the finding of the jury, we are, as repeatedly held by this
court, powerless to set aside the verdict.  The verdict of
guilty necessarily included a finding by the jury that the
defendant was sane at the time he killed Clyde Berger.
*January v. State,* 16 Okla. Cr. 166, 181 Pac. 514.

It is true that the defendant offered evidence, which
was not denied by the state, that previous to the killing
of Clyde Berger he had the general reputation of being a
man of peace and quietude, and it is also true that the law
offers a premium for such previous good character, per-
mitting it to generate a doubt of the guilt of an accused,
where without such good character no doubt would exist;
but where the guilt of the defendant is clearly shown by
evidence beyond a reasonable doubt, as in the instant case,
such good character cannot be a shield for the crime com-
mitted and work an acquittal. *Ernst v. State,* 16 Okla. Cr.
—, 184 Pac. 793.

Instruction No. 8, complained of, correctly instructs
the law, and the court did not err in giving the same.
*Adair v. State,* 6 Okla. Cr. 284, 118 Pac. 416, 44 L. R. A.
(N. S.) 119.

In the *Adair Case* an instruction in the identical words
of instruction No. 8, given in this case, was requested and
refused.   Judge Doyle in a very exhaustive opinion, in
which he collates the authorities, both American and
English, upon the question covered by the said instruction,
held that the said refused instruction correctly announced
the law.

Instruction No. 11, given the jury and complained of
by the defendant, we think somewhat involved by reason

of the expression therein, "I suggest," which we think may· be properly defined as "I instruct," and, as thus defined, to· correctly state the law, especially when the charge of the· court is considered as a whole, as we must consider it; and· the giving of said instruction does not warrant a reversal of this case. *Miller v. State*, 9 Okla. Cr. 255, 131 Pac. 717, L. R. A. 1915A, 1088.

We are of the opinion that the motion for a new trial and the motion in arrest of judgment were each properly overruled.

The judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.